```
          IN THE UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| NATIONAL LOAN INVESTORS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | 7:03CV5032 |
| | ) | |
| v. | ) | |
| | ) | |
| THE WESTERN SUGAR COMPANY, | ) | MEMORANDUM OPINION |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on defendant, The Western Sugar Company's ("Western Sugar") motion for attorney's fees (Filing No. 36) and plaintiff National Loan Investors, L.P.'s ("National Loan") second motion to dismiss without prejudice (Filing No. 40). Both parties have submitted briefs and affidavits in support of their respective positions on these issues. In addition, the Court has reviewed relevant case law. Having considered all submissions and applicable case law, the Court will grant Western Sugar's motion for attorney's fees and will grant National Loan's motion to dismiss without prejudice.

**Rule 11(b)**

Federal Rule of Civil Procedure 11(b) provides that an attorney, by signing a pleading, "is certifying that to the best of the [attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . [that] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law[.]"  Fed. R. Civ. P. 11(b).  If Rule 11(b) is violated, the Court may impose appropriate sanctions upon the attorneys, law firms or other parties who have violated 11(b) or are responsible for the violation.  Fed. R. Civ. P. 11(c).

A court may also impose sanctions pursuant to its inherent authority to punish "conduct which abuses the judicial process."  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45, 111 S. Ct. 2123 (1991).  Where the court sanctions attorney conduct under its inherent power, the allegedly offensive conduct must "constitute[] or [be] tantamount to bad faith."  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S. Ct. 2455 (1980).

### DISCUSSION

**Motion to Dismiss**

This Court only possesses subject matter jurisdiction if the litigation involves a federal question, or if the amount in controversy exceeds $75,000 and there is complete diversity between the plaintiffs and defendants.  Here, the plaintiff does not assert federal question jurisdiction and the facts would not support such jurisdiction.  The amount in controversy is alleged to be $250,000 which is sufficient to satisfy the requirements for diversity jurisdiction.  Thus, subject matter jurisdiction

will exist only if there is complete diversity between the parties.

From plaintiff's response to this Court's order on defendant's motion to compel, it is clear that plaintiff as a limited partnership is a citizen of Colorado for diversity purposes because one of its limited partners was a citizen of Colorado at all times relevant to this litigation.  Defendant's status as a citizen of Colorado for diversity jurisdiction purposes has been established since the inception of this litigation.  Thus, where both the plaintiff and defendant are citizens of Colorado, diversity jurisdiction is not present and this action must be dismissed.

**Sanctions**

   **Requirements to Impose Sanctions**

A district court must enter findings of fact in ruling on a motion for sanctions.  See *Williams v. Giant Eagle Mkts., Inc.*, 883 F.2d 1184, 1191 (3d Cir. 1989); *Lewis v. Brown & Root, Inc.*, 722 F.2d 209, 210 (5th Cir. 1984); *Walter v. Fiorenzo,* 840 F.2d 427, 436 (7th Cir. 1988); *Trulis v. Barton,* 107 F.3d 685, 692 (9th Cir. 1995); *Braley v. Campbell*, 832 F.2d 1504, 1513 (10th Cir. 1987)(all implying that a district court must enter findings in support of a determination of sanctions).  Findings ensure that the sanctions address the excess costs resulting from

the misconduct, provide the sanctioned party an adequate opportunity to respond, and facilitate meaningful appellate review.  *Lee v. L.B. Sales*, 177 F.3d 714, 718 (8th Cir. 1999).

A district court must identify the conduct that is sanctionable with specificity if the sanctions are to have any effect on the conduct of the sanctioned parties in the future and to allow for meaningful appellate review as to the appropriateness of any sanctions imposed.  *Lee*, 177 F.3d at 719.  Therefore, the Court makes the following findings of fact.

**Findings of Fact**

National Loan, a limited partnership, knew when it filed its complaint on November 26, 2003, that Western Sugar was a Colorado citizen for purposes of diversity jurisdiction.  (Filing No. 1).  As a limited partnership, National Loan is considered a citizen of every state in which any of its partners, whether general or limited, reside.  *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96, 110 S. Ct. 1015, 1021 (1990).  Thus, since 1990 the law has been clear as to the citizenship of a limited partnership for purposes of diversity jurisdiction.  At all times relevant to this litigation, National Loan had a limited partner that was a resident of Colorado (Amended Answer to Interrogatory Ordered by the Court February 10, 2005).  James Nisley ("Nisley"), National Loan's attorney, was explicitly advised that

National Loan had a Colorado limited partner in a January 30, 2004, letter from National Loan.

While it should have been clear to National Loan at the initiation of this litigation that this Court did not possess subject matter jurisdiction, Western Sugar formally put National Loan on notice of its concerns about whether subject matter jurisdiction existed in its February 2, 2004, answer (Filing No. 12).  Through discovery, Western Sugar sought a response from National Loan that would clarify whether subject matter jurisdiction existed.  Yet, National Loan refused to give an adequate response.  In the face of National Loan's resistance, Western Sugar filed a motion to compel response on November 4, 2004 (Filing No. 24).  National Loan did not file any response to this motion.  On December 3, 2004, this Court granted the motion to compel (Filing No. 30).  On December 10, 2004, National Loan's subsequent reply to the motion to compel was unresponsive to the jurisdictional issue, stating that "One of the limited partners of the Plaintiff is a Nebraska resident."  (Filing No. 32).  It wasn't until March 1, 2005, in response to a written request of defendant that National Loan disclosed that at all relevant times, one of its limited partners was a citizen of Colorado (Filing No. 45, ¶ 56).

NLI, through its Vice President William Smith, was actively involved in the decision-making process related to this

litigation. Smith hired Nisley to represent NLI but exercised control over the litigation. In Smith's January 30, 2004, letter to Nisley, Smith states "I like to receive copies of absolutely <u>everything</u> as it is easier for me to remember things if I read them." (emphasis in original). In this same letter Smith comments specifically on the issue of diversity when he states "I would concede that we would not have diversity to file a federal lawsuit in Colorado, but we do have diversity in the state of Nebraska and that is where you filed the lawsuit. Just because the defendant has an office in Colorado does not bring the diversity question into play with our Nebraska federal suit. (Here I am practicing law and making assertive statements; I should perhaps say I certainly hope that my assumptions are the way things will work out.)" He goes on to tell Nisley, "I look forward to working with you on this file."

Smith also was a central figure in NLI's refusal to give an adequate response to Western Sugar's inquiries as to diversity. On July 30, 2004, Smith sent Nisley his observations and proposed answers to Western Sugar's discovery requests. Here, Smith states in response to interrogatory number one that "The identity of the limited partners of NLI is irrelevant to this litigation. NLI refuses to disclose." He further states in response to the next interrogatory that "we will not identify any information pertaining to the limited partners." Later, in

regard to a request for production of documents Smith wrote, "If we have to produce the deposition, produce it.  If we do not, let's not make friends."  Smith further indicates his significant involvement in the litigation when he signs off this letter saying "I am sure once you read my rather wordy responses you will call me to discuss these and the concepts I have put forth."

Thus, while it is Nisley's signature, as NLI's attorney in this action, that certified the propriety of bringing this action in federal court, it is clear that National Loan was actively involved in the decision-making process related to all aspects of this litigation, and specifically to the issue of diversity.

**Sanctions Analysis**

The Eighth Circuit has announced that "the standard under § 1927 and Rule 11 is whether the attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'"  *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)(citations omitted).  In bringing this complaint in federal court, Nisley has affirmed that he possessed a reasonable belief that this Court possessed jurisdiction.  Where no federal question is presented, Nisley must therefore possess a good faith reasonable belief that complete diversity existed between the plaintiff and the defendant.  The law has been clear since 1990 that a limited

-7-

partnership is considered a citizen of every state in which any general or limited partner resides. *Carden*, 494 U.S. at 195-96, 110 S. Ct. at 1021, and that National Loan Investors, L.P., would be considered a citizen of every state where any of its partners reside. The Court can reasonably hold Nisley accountable for knowing the state of the law and the citizenship of his client for diversity purposes. In bringing this action in federal court, Nisley acted with either reckless or intentional disregard of his duties to the Court because the lack of diversity jurisdiction was patently apparent. For these reasons, an award of fees is appropriate under Rule 11.

Under Rule 11, the Court may impose appropriate sanctions upon the attorneys, law firms or other parties who have violated Rule 11(b) or are responsible for the violation. Fed. R. Civ. P. 11(c). While it is Nisley's signature, as NLI's attorney in this action, that certified the propriety of bringing this action in federal court, it is clear that National Loan was actively involved in the decision-making process related to all aspects of this litigation, and specifically to the issue of diversity. Smith, National Loan's vice-president, controlled this litigation. Smith hired Nisley and in his own words "practiced law" in telling Nisley "we do have diversity in the state of Nebraska." (Plaintiff's Ex. B, January 30, 2004, letter from Smith to Nisley, p. 2). Later, in response to Western

Sugar's discovery requests, Smith wrote to Nicely that, "The identity of the limited partners of NLI is irrelevant to this litigation.  NLI refuses to disclose."  (Plaintiff's Ex. F, Smith Letter to Nisley, July 30, 2004, p. 3).  Later, in this same letter, Smith reiterated that "we will not identify any information pertaining to the limited partners."  (Ex. F, p. 3). Thus, the Court concludes that National Loan should be held responsible for paying the sanctions assessed under Rule 11.

Western Sugar has requested attorneys' fees of $37,566.25 and costs of $1,630.76 (March 25, 2005, Declaration of Marc D. Flink, ¶¶ 6-7, 9).  While the Court believes that an award under Rule 11 is appropriate in order to penalize National Loan for bringing this action in federal court, the Court does not believe that it should compensate Western Sugar for fees and costs incurred in conducting research and discovery that will be useful in the related state court litigation.

Reviewing the affidavits of the various attorneys who worked on this case provides no definite answer as to what portion of the claimed fees should apply to this jurisdictional issue.  Certainly not more than fifteen per cent (15%) of the claimed fees can reasonably be so attributed.  Thus, the Court will order National Loan Investors to pay the sum of $5,625.00 to Western Sugar as a sanction for conduct which the Court finds violates Federal Rule of Civil Procedure 11(b).  This award will

not only sanction plaintiff for its improper conduct but will compensate Western Sugar for fees and costs it has incurred in defending this issue in federal court. A separate order will be entered in accordance with this memorandum opinion.

DATED this 20th day of April, 2005.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court